IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| THEODORE JON ERB and | * | CHAPTER 13 |
| LYNN ANN ERB, | * | |
|     Debtors | * | |
| | * | CASE NO. 1:10-bk-08958MDF |
| BENEFICIAL CONSUMER | * | |
| DISCOUNT COMPANY, | * | |
|     Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| THEODORE JON ERB and | * | |
| LYNN ANN ERB, | * | |
|     Respondents | * | |

## OPINION

Before me is the objection of Beneficial Consumer Discount Company ("Beneficial") to the Chapter 13 Plan filed by Theodore and Lynn Erb ("Debtors"). Beneficial holds a second mortgage against Debtors' residence. In their Second Amended Chapter 13 Plan (the "Plan"), Debtors propose to "strip off" Beneficial's mortgage under 11 U.S.C. § 506(a). Beneficial objects to this treatment of its claim alleging that it violates the anti-modification clause of 11 U.S.C. § 1322(b)(2). For the reasons set forth below, Beneficial's objection to the Plan will be sustained.

### I. Procedural History

Debtors filed their Chapter 13 petition on November 2, 2010. In their schedules, Debtors report that the fair market value of their residence, which is located at 340 East Front Street, Lewisberry, Pennsylvania (the "Property"), is $109,000. The Property is subject to liens held by BAC Home Loans Servicing LP ("BAC"), Beneficial, and the York County Tax Claim Bureau

(the "Tax Claim Bureau")[1] listed in the schedules in the amounts of $109,404, $97,639 and $1562 respectively. On December 16, 2010, BAC filed a proof of a claim in the amount of $119,022.93 that has not been objected to by Debtors. Although the Tax Claim Bureau has not filed a proof of claim, Debtors propose to pay tax claims in the amount of $1562.09 through the Plan. Therefore, when the claims of BAC and the Tax Claim Bureau are considered, there are liens against the Property of $120,585.02 that are superior to Beneficial's claim.

On November 17, 2010, Debtors filed their first proposed plan. After Beneficial and the Chapter 13 Trustee filed objections, Debtors twice amended their plan. The second amendment was filed on February 10, 2011, and Beneficial immediately filed an objection. In the Plan, Debtors propose that Beneficial's lien will be avoided pursuant to 11 U.S.C. § 506(a) upon confirmation of the Plan. In its objection, Beneficial asserts that its lien cannot be avoided under § 506(a) because there is value in the Property in excess of the liens superior to Beneficial's claim.

A confirmation hearing was held on April 14, 2011 at which each party presented testimony from an appraiser regarding the value of the Property. The matter is ready for decision.[2]

---

[1] On schedule C, Debtors report that they owe a debt to the "York City Tax Claim Bureau." However, under Pennsylvania law, a tax claim bureau is a county office created in the office of the county commissioners. See 72 Pa. C. S. § 5860.201. Therefore, the Court believes that the debt in question is owed to the York County Tax Claim Bureau.

[2] I have jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (B), (K), (L) and (O). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7052, which is applicable to contested matters pursuant to Fed. R Bankr. P. 9014.

## II. Factual Findings

The Property is located just outside of Lewisberry, Pennsylvania, a small borough in northern York County.[3] Debtors acquired the Property by a deed recorded on August 4, 1999, which listed the sale price of the home at $109,900.

Two structures occupy the Property – a residence and a three-car garage. The residence is a two-story Colonial style structure built in 1920.[4] It contains 2450 square feet of living space consisting of nine total rooms, including five bedrooms and two bathrooms. It is heated with a 20-year-old gas furnace and has a full, unfinished basement. The construction is wood frame with asbestos siding that has been painted "fairly recently." (N.T. 25.) The construction and condition of the roof are not disclosed in the record. The Property has access to public sewer, but has a private well.[5]

The general condition of the residence is below-average and the garage is in good condition. An enclosed wooden porch on the house is rotting and needs to be replaced. Rain gutters around the porch are rusted through. Notable defects to the interior include water damage on a first floor ceiling beneath a bathroom and a bedroom with mismatched flooring. The house has a large kitchen but it needs to be updated. The bathrooms are in average condition.

---

[3]As of the 2000 census, the Borough of Lewisberry had 362 persons. *See* census data at http://pasdc.hbg.psu.edu/Data/Census2010/tabid/1489/Default.aspx. Last visited June 2, 2011.

[4]The year in which the garage was built is not disclosed in the record.

[5]The parties' appraisal reports provide conflicting information regarding access to a public sewer system. Beneficial's appraisal report does not indicate that public sewer services are available, but this omission may be attributable to the limited scope of the appraiser's examination of the Property.

3

The house and garage are situated on .7 acres of relatively level, open ground with 160 feet of frontage onto a two-lane highway. A few mature trees surround the residence; otherwise, there is little decorative landscaping. A gravel driveway provides access to the garage, which is located behind the residence.

### III. Discussion

Generally, the rights of a holder of a claim secured only by a security interest in real property that serves as a debtor's principal residence may not be modified in a Chapter 13 plan. *See* 11 U.S.C. § 1322(b)(2). However, if a lien is completely undersecured, it may be "stripped off." *See McDonald v. Master Financial, Inc. (In re McDonald),* 205 F.3d 606, 611 (3d Cir. 2000), *cert. denied*, 531 U.S. 822 (2000) ("a wholly unsecured mortgage holder does not have a secured claim").

Section 506(a) of the Bankruptcy Code provides that [a]n allowed claim . . . secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a). With certain limited exceptions, if a lien against property is not an allowed secured claim, the lien is void. 11 U.S.C. § 506(d). "Together, subsections (a) and (d) of § 506 provide the statutory basis for lien stripping . . . [which] refers to the process of reducing a secured claim to reflect the value of the underlying collateral." *Berkebile v. Ocwen Loan Servicing, LLC (In re Berkebile)*, 444 B.R. 326, 330 (Bankr. W.D. Pa. 2011) (citing *In re Johnson,* 386 B.R. 171, 173 (Bankr. W.D. Pa. 2008), *aff'd* 415 B.R. 159 (W.D. Pa. 2009)).

A debtor may avoid a lien under § 506(a) and (d) either by filing a motion or by providing for avoidance in a Chapter 13 plan. *See* 11 U.S.C. § 1322(b)(2); Fed. R. Bankr. P. 3012. *Also see Dickey v. Beneficial Finance (In re Dickey)*, 293 B.R. 360 (Bankr. M.D. Pa. 2003); Local Bankruptcy Form 3015-1. Regardless of whether lien avoidance is requested in a motion or through a plan, a debtor bears the burden of proof on the issue of valuation under § 506(a). *See In re Dickey*, 293 B.R. at 363; *Shropshire v. Oakwood Acceptance Corp. (In re Shropshire),* 284 B.R. 145 (Bankr. N.D. Ala. 2002); *In re Brown,* 244 B.R. 603 (Bankr. W.D. Va. 2000); *In re Roberts,* 210 B.R. 325 (Bankr. N.D. Iowa 1997); *Webb v. First Mutual Corp. (In re Webb),* 99 B.R. 283 (Bankr. E.D. Pa. 1989). A lien may be stripped off if the value of all liens superior to the lien subject to the § 506(a) valuation exceeds the value of the collateral. *See Johnson v. Asset Management Group, LLC (In re Johnson),* 226 B.R. 364 (D. Md. 1998); *Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166 (BAP 10th Cir. 2005).

In the matter before me, Debtors assert that Beneficial's second mortgage may be avoided because the claims held by BAC and the Tax Claim Bureau total $110,966, which is greater than the value of the Property, which is alleged to be $110,000. To determine whether Beneficial's claim is unsecured, the Court must determine both the amount of claims alleged to be liens against the Property and the value of the Property. BAC has filed a proof of claim in the amount of $119,022.93. When the amount in BAC's proof of claim is added to the amount Debtor alleges is owed to the Tax Claim Bureau, the total amount of secured claims superior to Beneficial's claim is $120,585.02. Therefore, in order to strip off Beneficial's mortgage, Debtors must prove that the value of the Property does not exceed $120,585.02.

5

As I have previously observed, real estate valuations "are matters of art more than science. . . ." *In re Hildreth*, 2011 WL 1332036, *5 (Bankr. M.D. Pa. April 7, 2011). In the matter before me, the appraisal testimony of each party's expert was flawed. Beneficial's expert, Ian Spitzer ("Spitzer"), conducted a "drive-by" appraisal and formed his opinion without having seen the interior of the Property. Debtors' expert, Robert Stoner ("Stoner"), conducted a thorough examination of the Property, but in determining value, relied heavily on one sale, a bank sale following foreclosure.

Both Stoner and Spitzer employed the "comparable sales approach" to valuation. In this approach, a subject property's characteristics are compared with those of similar properties that have recently sold in similar transactions. In the process, the prices of the comparable transactions are adjusted according to the presence, absence, or degree to which characteristics of the subject property can be compared to characteristics of the properties sold in the comparable transactions. It is generally accepted that this approach provides the "best evidence of market value" in cases where a court must determine the value of real property. *United States v. 819.98 Acres of Land,* 78 F.3d 1468, 1471 (10th Cir. 1996) (citations omitted).

As the Factual Findings indicate, the property at issue in this case is a .7 acre parcel with a 91-year-old residence and a three-car garage. The expert witnesses disagreed as to whether the Property's locale may be more properly classified as "suburban" or "rural," but ultimately this distinction was not a significant factor in the experts' valuations. Nonetheless, the location of the property and its age rendered the experts' search for "comparables" more difficult. The comparable sales used by Spitzer occurred within three months of the appraisal date while the comparable sales used by Stoner occurred during an eight-month period before and after the

6

subject property was viewed. Two of the properties selected by Spitzer were more than six miles from the subject property while all of the properties selected by Stoner were less than five miles from the subject property and were located in the same school district. All of Spitzer's sales occurred before the Property was viewed, but Stoner selected comparable sales that occurred both before and after he inspected the Property. Two of Stoner's comparable properties were significantly smaller than the subject.

Spitzer's characterized the overall condition of the Property as "average" and Stoner's characterized it as "below average." The upshot of the testimony from both sides was that the residence is neither an eyesore nor a showplace; it is a 91-year-old structure bearing signs of age and in need of general updating with significant repairs required in certain areas. However, the Court finds that Stoner's characterization of the Property is more accurate. Stoner's testimony, supported by photographs, revealed that the most neglected part of the residence is an enclosed porch. He testified credibly that the porch is "rotting" and in need of demolition and replacement. He estimated that the cost of that work could be as much as $15,000. Spitzer was unable to rebut Stoner's testimony because his examination was limited to what he could view from his vehicle parked on the street. To the extent that Stoner's testimony was based on a detailed examination of both the interior and exterior of the Property, his assessment of its condition is more persuasive.

Although Stoner's examination of the Property was more thorough, his opinion of value was compromised by the method used to analyze comparable sales. Rather than consider the three comparable sales he selected, Stoner primarily relied on one sale he considered most similar to the subject. If the Property were not a farmhouse, but rather a condominium unit

7

identical to dozens of others, then reliance on a single comparable might be justified. However, the Property is a unique parcel of real estate containing an older structure in a rural/suburban area, thus requiring that a cross-section of the real estate market be analyzed to help estimate its value. *See In re Weichey*, 405 B.R. 158, 163-64 (Bankr. W.D. Pa. 2009) (court rejects expert's property valuation based on single recent sale as being "logically inconsistent" and contravening professional standards).[6]

Adding to the questionable validity of relying primarily on one comparable sale, the sale selected was a property sold by a mortgagee bank following foreclosure. On cross examination, Stoner admitted that foreclosure sale prices are often below actual market value, but he made no upward adjustment in value to compensate for this factor. Stoner did moderate his assessment of value by averaging the adjusted sale price of the property sold after foreclosure ($106,000) with a second comparable with an adjusted value of $115,610 to arrive at a market value of $110,000.

The value assigned by Spitzer is flawed for different reasons – most significantly his failure to consider the interior condition of the Property. In his appraisal, Spitzer concedes that [i]nterior inspection of the property and interview with the owner could significantly change our opinion of value." Under the circumstances, the Court will determine the value of the Property by averaging all of the comparable sales and adjusting that amount based upon the deductions included in Stoner's appraisal that were not considered in Spitzer's more limited review. An average of all six comparable properties provides a value of $137,728. The first reduction to this

---

[6]Even if Stoner had given each comparable property equal weight, his opinion of the appraised value of the Property would have been substantially below the value selected by Spitzer. An average of the adjusted sales prices for comparable properties selected by Stoner appraisal is $115,260.

8

average amount is to the overall condition of the Property. I adopt Stoner's assessment that the Property is "below average" and, therefore, the average price of $137,728 should be reduced by $10,000, the same amount deducted in Stoner's appraisal. Further the quality of the construction, with the deteriorating asbestos siding, also supports a further reduction in the value of $3000. Finally, Spitzer erroneously believed that the Property had central air conditioning and adjusted his estimate of the Property's value upward by $1500. Accordingly, the value of the Property should be further reduced in this amount.

Based on these adjustments, I conclude that the value of the Property is $123,228. Because there are superior liens against the Property totaling $120,585, there is equity to which Beneficial's lien may attach. Accordingly, Beneficial's lien may not be stripped off, and its Objection to Debtor's Plan will be sustained.

An appropriate Order will be entered.

**By the Court,**

_____
Mary D. France
Chief Bankruptcy Judge

Date: June 29, 2011

9